IN CLERK'S OFFICE
U.S. DISTRICT C

★ AUG 2 5 2017 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CV 17 - 5047

-----------------------------------------------------------------X

Penn-Star Insurance Company,

                              Plaintiff,

            - against -

Maintenance Asset Management Inc. and
Declan McElhatton,

                              Defendants.

-----------------------------------------------------------------X

Action No.:

GARAUFIS, J.

COMPLAINT FOR
RESCISSION AND
DECLARATORY
JUDGMENT

TISCIONE, M.J

Plaintiff, Penn-Star Insurance Company ("Penn-Star"), by and through its counsel of record, and for its Complaint for Rescission and Declaratory Judgment against Defendants, Maintenance Asset Management Inc., and Declan McElhatton, alleges, states, and avers:

**Jurisdiction and Venue**

1.      This is an action for Rescission of an insurance contract and for Declaratory Judgment, pursuant to 28 U.S.C. § 2201 et seq. and Rule 57 of the Federal Rules of Civil Procedure.

2.      Jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. §1332(a)(1) and §1332.  The amount in controversy readily exceeds $75,000, exclusive of interest and costs, with respect to the subject liability insurance policy and the contentions of third parties as to the amount of damages caused by Maintenance Asset Management Inc. and Declan McElhatton, resulting from their purported wrongful conduct in causing extensive fire and water damages to the Martinique Plaza apartment building in Queens, New York.

1

3.      Venue is appropriate under 28 U.S.C. § 1391 because the defendant, Maintenance Asset Management Inc., is New York corporation with its principal place of business in Westchester County, New York, and many of the acts which form the basis of this action occurred in the Eastern District of New York.

## Parties

4.      Penn-Star Insurance Company is a Pennsylvania corporation with its principal place of business in Bala Cynwyd, Pennsylvania.

5.      Defendant Maintenance Asset Management Inc., formerly known as McElhatton Mechanical, Inc., is a New York corporation with its principal place of business in Westchester County, New York.

6.      Defendant Declan McElhatton (a.k.a. Daniel McElhatton and David McElhatton) is the President of Maintenance Asset Management Inc., and was the President of McElhatton Mechanical, Inc.  On information and belief, McElhatton is domiciled and a resident of Yonkers, New York.

## Insurance Policy

7.      Penn-Star Insurance Company issued a Commercial Lines Policy that included a Commercial General Liability Coverage Part to Maintenance Asset Management Inc. under Policy No. PAV0083896 which was in effect from May 5, 2016 to May 5, 2017.

8.      The Commercial General Liability Coverage Part has limits of insurance of $1 million for each "occurrence," and $2 million for the products completed operations aggregate and general aggregate limits.   The Commercial General Liability Coverage Part includes Coverage A for "bodily injury" and "property damage" liabilities.

9.      The Declarations Page of Penn-Star's Commercial Lines Policy states the "Business Description" of the insured is "INTERIOR RENOVATIONS CONTRACTOR."

10.     Under the Declarations, the policy is rated for "Dry Wall or Wallboard Installation," "Painting - interior - buildings or structures," "Carpentry - interior," "Contractors - subcontracted work - in connection with construction, reconstruction, repair or erection of buildings," and "AI - Blanket."  The policy states estimates of the annual payroll to be $40,000, and the cost of subcontracted work to be $15,000.

11.     Penn-Star's policy was underwritten and administered by the Scottish American Insurance General Agency ("Scottish American") which worked in the capacity of Penn-Star's managing general underwriter for the risk.

12.     Scottish American, as the managing general underwriter for Penn-Star, performed the following duties:: obtained applications from retail insurance brokers and producers; assessed the desirability of issuing policies to prospective insureds; solicited renewal applications; assessed the desirability of renewing policies for existing insureds; evaluated risks; determined the eligibility of the risk based on the information contained in the application materials in reference to Penn-Star's underwriting guidelines; determined appropriate pricing; provided quotations for prospective policies; bound coverage; participated in issuing policies; collected the premiums from the retail insurance producers; evaluated and issued endorsements where appropriate; issued certificates of insurance; and, generally worked as the underwriters for Penn-Star on certain classes of business.  Scottish American had certain binding authority from Penn-Star, and when appropriate, the managing general underwriter would also transmit claims information received from the retail brokers or producers to Penn-Star.

13.     Maintenance Asset Management Inc.'s insurance broker submitted insurance applications to Scottish American for a potential May 5, 2016 to May 5, 2017 Commercial General Liability policy.

14.   The applications contain information that Maintenance Asset Management Inc. had not previously done business under another name, and stated the nature of its business and description of operations was "Interior Renovation."

15.   The applications contain information that "100%" of the insured's work was performed "Inside Building", that it did not participate in repairs or structural alterations, its work involved no exposure to flammables, roofing was not performed by the insured or its subcontractors, and the insured did not perform operations above three stories in height.

16.   The applications contain information that the insured's estimated $200,000 in annual revenues would be comprised of: sales for "Painting Interior" of $100,000; for "Drywall" of $20,000, for "Carpentry" of $20,000; and, for "Subcontracted Work" of $60,000.

17.   The applications were signed on April 26, 2016 by "Daniel McElhatton" as the president of Maintenance Asset Management Inc. just underneath text that reads: "I DECLARE THAT THE STATEMENTS MADE IN THIS APPLICATION ARE COMPLETE AND TRUE."

18.   In reliance on the statements made in Maintenance Asset Management Inc.'s insurance applications, and in reference to Penn-Star's underwriting criteria for Commercial General Liability policies, Scottish American quoted the risk for Penn-Star and, after receiving an order to bind coverage, then issued Penn-Star Insurance Company Policy No. PAV0083896 to Maintenance Asset Management Inc. for the policy term of May 5, 2016 to May 5, 2017.

### Fire Damage Claims from the Insureds' Roofing Operations

19.   At various times material hereto, Maintenance Asset Management Inc. contracted with Algin Management Co. LLC for repairs to the roof of the Martinique Plaza, located at 56-11 94th St., in Elmhurst, New York.  The building is owned by East 96th Street Co. LLC, has six floors, and contains 111 residential and 2 commercial units.

4

20.     On April 11, 2017, a Maintenance Asset Management Inc. crew performed hot-tarpaper roofing repairs to the Martinique Plaza building, and a fire broke out about three hours after the insured left the premises.  The apartment building sustained roof-top and top-floor damages from the fire.

21.     On information and belief, on the date of the fire, no construction permit had been issued for the work, no special permit had been issued for the application of hot tar roofing materials, and neither Maintenance Asset Management Inc. nor Declan McElhatton had a current contractor's license.

22.     The contractor's license once held by McElhatton Mechanical, Inc. had expired in 2016, before the roofing repair work at the Martinique Plaza.

23.     The New York City Department of Buildings' website contains an April 12, 2017 entry for the Martinique in "Complaints By Address" that states there was an April 11, 2017 fire on the sixth floor and a large part of the roof and wood joints were substantially damaged in the blaze.  The report states there are visible fire cracks in the wall along 56th Avenue above the 6th floor.

24.     The New York Fire Department Incident Report concerning the April 11, 2017 fire at 56-11 94 Street in Queens states the cause of the fire was the illegal use of "incendiary - torch."

25.     Media and newspaper articles concerning the incident state that the "five alarm fire" also resulted in eleven firefighters reporting injuries, with five of them hospitalized with "serious injuries."  The Red Cross is reported to state that 144 residents were temporarily displaced as a result of the fire.

26.     A Complaint was filed on or about April 13, 2017 in the Criminal Court of the City of New York, County of Queens, under Index No. CR-014435-17QN against Declan

McElhatton.   In connection with the blaze, McElhatton is charged with arson in the fourth degree, reckless endangerment in the second degree, and for violation of the Penal Code 1417.4 "Safeguarding Roofing Operations."   The Complaint states that Fire Department personnel observed on the roof: a roofing torch, eighteen rolls of black roofing materials designed to be applied by use of a torch, two propane tanks, and a rubber hose.

27.   Preliminary damage estimates from the property insurer for the building, which has placed Penn-Star on notice of the loss, are that the building sustained damages in excess of $2 million in fire, smoke, and water damages.

28.   To date, Penn-Star has received demands from claimants and/or their property insurers for compensation for their losses arising out of the fire at the Martinique Plaza.   The claimants attribute responsibility for their losses to Maintenance Asset Management Inc. and / or Declan McElhatton.   Formal civil litigation against Maintenance Asset Management Inc. alleging its contribution to the building fire losses, damages to the tenant's property, and/or bodily injuries is almost certain to follow.

<b>Misrepresentations and Concealment</b>

29.   From Scottish American's and Penn-Star's perspective, for Commercial General Liability policies issued to contractors, the insureds operations and types of the construction exposures presented were of paramount significance in assessing the desirability of issuing a policy like the one requested in Maintenance Asset Management Inc.'s application materials.   In fact, Penn-Star's underwriting criteria preclude the issuance of Commercial General Liability policies to contractors whose work includes roofing operations.

30.   In reliance upon the information provided in the Applications, with the assumption that the insured had complied with its duty to fairly and accurately disclose matters material to the risk insured, and based in particular on the answers to the questions in the

applications, Scottish American quoted, and upon receiving an order, then issued for Penn-Star the requested policy to Maintenance Asset Management Inc. effective for the policy term of May 5, 2016 to May 5, 2017.

31.     Had Maintenance Asset Management Inc. accurately stated the true facts concerning the types of construction it was or planned to be involved in during the 2016 policy term, Penn-Star would not have issued any policy to Maintenance Asset Management Inc., and would not now be confronted with claims for a type of risk it never intended to insure.

32.     Maintenance Asset Management Inc.'s misrepresentations, concealments, and half-truths, whether innocently, negligently, or fraudulently made, deprived Scottish American and Penn-Star of the reasoned ability to assess the actual desirability of issuing a Commercial General Liability policy to Maintenance Asset Management Inc.

**Reservation of Rights**

33.     Following the first notice of claim received by Penn-Star alleging Maintenance Asset Management Inc.'s liabilities arising out of the April 11, 2017 fire at the Martinique Plaza, and for every claim received thereafter, Penn-Star has timely issued a reservation of rights letter that includes reservations for Penn-Star to pursue this action for rescission for material misrepresentations and declaratory judgment to determine its actual obligations, if any, under Policy No. PAV0083896 for the insured(s) potential eventual liabilities arising out of the Martinique Plaza fire.

34.     Penn-Star also reserves the right to seek declaratory relief for matters not encompassed within this Complaint, should that later be appropriate and desirable upon the development of litigation against Maintenance Asset Management Inc. and/or Declan McElhatton resulting from the Martinique Plaza apartment building fire.

**First Cause of Action – Rescission**

35.     Paragraphs 1 – 34 above are incorporated herein by reference as if set forth in full.

36.     Scottish American for Penn-Star obtained applications from Maintenance Asset Management Inc., and its broker, and in reliance on the information provided therein, in combination with Penn-Star's underwriting criteria, issued Policy No. PAV0083896.  The policy was in effect on the date of the Martinique Plaza fire.

37.     Because of the claims related to the fire, and through Penn-Star's investigation of the loss, Penn-Star has determined that Maintenance Asset Management Inc.'s insurance applications contained material misrepresentations and concealments of the types of work performed by the insured which actually included roofing, structural repairs, demolition, work to the exterior of buildings, and operations at heights.

38.     These types of operations, particularly hot tar roofing repairs using blow touches on wooden roofs of occupied multi-unit, multiple story apartment buildings, involve significantly higher levels of risk than the interior painting and drywall operations Maintenance Asset Management Inc. stated it performed in its insurance applications.

39.     Most significantly, and plainly stated, Penn-Star does not issue Commercial General Liability policies to contractors involved in roofing operations.

40.     Maintenance Asset Management Inc.'s misstated or omitted information of the types of work it performed was "material" to the risk in that the misrepresentations should reasonably be considered as affecting Scottish American and Penn-Star's decision to enter into the contract, and their evaluation of the degree or character of the risk involved in the account.

41.     Insurers issuing Commercial General Liability policies to contractors involved in roofing operations would charge significantly higher premiums than the $4,413. advance annual premium Penn-Star charged for issuing Policy No. PAV0083896.   While a contractor

misrepresenting its actual hazards of operations may thereby gain a competitive advantage relative to its competitors, it becomes highly inequitable in that circumstance to saddle an insurer that was duped by the insured's concealments with the losses that occur within the non-disclosed hazardous operations actually performed by the insured.

42.     Penn-Star's policy provides under Section IV - Conditions:

> **6. Representations**
> By accepting this policy, you agree:
> a. The statements in the Declarations are accurate and complete;
> b. Those statements are based upon representations you made to us; and
> c. We have issued this policy in reliance upon your representations.

43.     Penn-Star is therefore entitled, under the facts presented and the application of New York law, for an order from the Court rescinding its Policy No. PAV0083896 under terms the Court may find just and proper.

44.     Penn-Star is ready to return the $4,413. annual advance policy premium paid by Maintenance Asset Management Inc. corresponding to the 2016 policy commensurate with the eventual ruling of the Court in this action.  Penn-Star will return the premiums to Maintenance Asset Management Inc. at the conclusion of this action, if appropriate, in the amount identified in the Court's Orders.

## Second Cause of Action – Declaratory Relief

45.     Paragraphs 1 – 44 above are incorporated herein by reference as if set forth in full.

46.     Had Maintenance Asset Management Inc.'s applications appropriately disclosed the actual types of the insured's operations, Scottish American for Penn-Star would not have quoted or issued the Commercial Lines Policy No. PAV0083896.

47.     There is now an actual justiciable controversy between Penn-Star and defendants, Maintenance Asset Management Inc. and Declan McElhatton, on whether Maintenance Asset Management Inc. has breached expressed warranties under the policy, whether Penn-Star is

entitled to rescind its policy for material misrepresentation or concealment, or if not, whether the policy should be reformed to include standard insurance industry restrictions for roofing contractors, and/or whether Penn-Star owes a duty to defend or indemnify anyone under its policy for liabilities arising out of the Martinique Plaza fire.

48.     Subjects for which the Court may provide declaratory judgment, identifying the rights and duties of the parties under Penn-Star's policy, inter alia, may include:

a.      Maintenance Asset Management Inc.'s duty of truthful disclosure of its actual operations;

b.      That the policy is unenforceable, or should be reformed, as there was no mutual intent for the policy to respond to roofing operations, exposure to flammables, work in multiple unit apartment buildings, or the insured's operations at heights above three floors;

c.      Whether the obligations under the policy are restricted to liabilities arising out of the insured's operations within the Business Description and rating classifications of the policy;

d.      Whether the insureds' reckless conduct combined with the substantially foreseeable result of a fire erupting from the use of a blow torch on a wooden roof structure and/or the virtual certainty of an ensuing fire, precludes a finding of an "occurrence" or an "accident" necessary to trigger the Insuring Agreement under Coverage A of the policy, or which implicates the Expected or Intended Acts Exclusion; and,

e.      The extent to which Penn-Star may have a continued duty to defend, or to indemnify anyone under Policy No. PAV0083896 in connection with liabilities alleged or proved resulting from the Martinique Plaza fire.

49.     It will now be appropriate and desirable for the Court to declare the rights, duties, and obligations of the parties as set forth herein.

**WHEREFORE,** Penn-Star prays:

50.     For a judgment rescinding Policy No. PAV0083896 issued to Maintenance Asset Management Inc. for material misrepresentations and/or concealment along with an order setting forth the amount of the consideration to be returned to defendants, under terms the Court finds appropriate; and/or

51.     For declaratory judgment setting forth the rights, duties, and obligations of the parties with respect to Policy No. PAV0083896; and/or

52.     For reformation of the policy to include standard provisions of Commercial General Liability policies issued to roofing contractors; and/or

53.     For a declaration that Penn-Star may withdraw from Maintenance Asset Management Inc.'s and Declan McElhatton's defense as to the claims arising out of the Martinique Plaza fire; and/or

54.     For a declaration that Penn-Star will not have any duty to indemnify Maintenance Asset Management Inc, Declan McElhatton, or anyone else for their liabilities arising out of the Martinique Plaza fire; and/or

55.     For a declaration that Penn-Star will not have any duty to satisfy any Judgments against Maintenance Asset Management Inc, Declan McElhatton, or anyone else as related to the Martinique Plaza fire;

56.     For costs of suit incurred herein; and,

57.     For such further relief as the Court deems just and proper.

August 25, 2017
New York, New York           By: _____
                                           Brad C. Westlye (7171)
                                           Attorney for Plaintiff
                                           PENN-STAR INSURANCE COMPANY
                                           225 East 96th Street 6R
                                           New York, New York 10128

(212) 831-7168
bwestlye@westlyelaw.com