UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

PENN-STAR INSURANCE COMPANY,

        Plaintiff and Counterclaim-Defendant,

  -against-

MAINTENANCE ASSET MANAGEMENT INC., et al.,

        Defendants and Counterclaim-Plaintiffs.

----------------------------------------------------------X

**REPORT & RECOMMENDATION**

17-CV-5047 (NGG) (ST)

**TISCIONE, United States Magistrate Judge:**

This is an action by Penn-Star Insurance Company ("Penn-Star") seeking rescission of an insurance policy it provided to Maintenance Asset Management Inc. ("Maintenance"). Greater New York Mutual Insurance Company ("GNY") seeks to intervene in the action, arguing that it possesses an equitable right of contribution under the policy and that it should have an opportunity to be heard before the Court rescinds the policy.

For the reasons stated below, the Court recommends that GNY's request to intervene and to submit an answer and counterclaim be granted.

## BACKGROUND

This action arises from a fire that occurred at the Martinique Plaza apartment building in Queens County, New York. The owner of the building is 56-11 94th Street Co., LLC ("56-11"), and the agent of the building is Algin Management Co., LLC ("Algin"). Both 56-11 and Algin are insured by GNY. *See* Fitzpatrick Decl., Ex. B. (Algin and 56-11 GNY Policy), ECF No. 38-4.

Algin hired Maintenance to perform certain work at the premises of Martinique Plaza. As a condition of this hiring, Algin required Maintenance to obtain general liability insurance. Maintenance obtained general liability insurance through Penn-Star. *See* Fitzpatrick Decl., Ex. C. (Agreement between Algin and Maintenance), ECF No. 38-5.

Employees of Maintenance allegedly caused a fire at Martinique Plaza by performing hot-tarpaper repairs to its roof. Am. Compl., ECF No. 20 ¶ 21. A group of the building's tenants filed a negligence action in the Supreme Court in New York County against 56-11, Algin, Maintenance, and Maintenance's owners. *See Fernandez, et al. v. 56-11 94th Street Co., LLC, et al.*, Index No. 161178/2017 (the "Underlying Litigation"). Subsequently, Penn-Star filed this action against Maintenance and Maintenance's owners seeking rescission of the policy it granted Maintenance, mainly on grounds that Maintenance misrepresented the type of work its employees would perform. *See* Am. Compl. ¶¶ 32-40. Penn-Star did not sue GNY, Algin, or 56-11 in this action.

On September 13, 2018, Penn-Star filed a notice indicating that it had accepted an Offer of Judgment made by Maintenance and its owners, which provides for rescission of the policy as void *ab initio*. ECF No. 33. On October 9, 2018, GNY filed a "cross-motion" to intervene in the lawsuit. ECF No. 38. The District Court referred GNY's cross-motion to the undersigned for decision exclusively as to its request "for an Order permitting intervention and allowing GNY to answer the Amended Complaint as an interested party with [a] Counterclaim." *See* Order dated November 6, 2018. The Court now turns to discussion of this motion.

## DISCUSSION

GNY seeks intervention as of right under Federal Civil Rule of Procedure 24(a) and, in the alternative, permissive intervention under Federal Rule of Civil Procedure 24(b). *See* Memorandum of Law in Support of Motion for Intervention ("Memo ISO"), ECF No. 38-12.

*Standards*

Federal Rule of Civil Procedure 24(a) provides that third parties have a right to intervene in pending litigation under certain circumstances. It reads:

On timely motion, the court must permit anyone to intervene who:

(1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). The purpose of the rule "is to prevent a multiplicity of suits where common questions of law or fact are involved." *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990). In order to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2), an applicant must "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 300 (2d Cir. 2003) (quoting *N.Y. News, Inc. v. Kheel*, 972 F.2d 482, 485 (2d Cir. 1992)).

The Federal Rules also provide for permissive intervention when the proposed intervener "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). "In exercising its discretion, the court must consider whether [permissive] intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* Courts in the Second Circuit also consider factors including "'the nature and extent of the interveners' interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal

questions presented.'" *Citizens Against Casino Gambling in Erie Cty. v. Hogen*, 704 F. Supp. 2d 269, 281 (W.D.N.Y. 2010) (quoting *H.L. Hayden Co. v. Siemens Medical Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986)).

<u>GNY has shown a cognizable interest that may be impaired if it is not permitted to intervene</u>

As far as the Court can tell, Penn-Star does not contest that GNY satisfies three of the four requirements for intervention as of right, i.e. that GNY has an interest in the action, that this interest may be impaired by disposition of the action, and that the interest is no longer being adequately protected by Maintenance. *See* Opposition to Cross-Motion to Intervene ("Opp'n"), ECF No. 42. GNY has presented substantial evidence that it satisfies each of these factors. GNY's interest in the action arises from the possibility that it will have an equitable right of contribution from Penn-Star if the plaintiffs prevail in the currently pending Underlying Litigation. Memo ISO 6-7; *see generally Maryland Cas. Co. v. W.R. Grace & Co.*, 218 F.3d 204, 209 (2d Cir. 2000) (finding that it is an "undisputed principle that a paying insurer can recover from a non-paying insurer") (citation omitted). If the policy between Penn-Star and Maintenance in this action is rescinded, this may extinguish GNY's equitable right of contribution by nullifying Algin's and 56-11's potential claims that they hired Maintenance only on the condition that it obtained general liability insurance, i.e. the policy issued by Penn-Star. *See Admiral Ins. Co. v. Joy Contractors, Inc.*, 19 N.Y.3d 448, 461 (2012) (finding that additional insureds cannot rely on a policy that has since been rescinded, even if the additional insureds did not cause rescission of the policy). And, given that Defendants have made an Offer of Judgment providing that Penn-Star's policy "shall be declared void *ab initio*," ECF No. 33-1 ¶ 1, no party is currently representing GNY's interest in having the policy remain in effect.

Penn-Star does, however, vigorously contest the timeliness of GNY's request to intervene. *See* Opp'n 2, 4-5; Affidavit of Randi Hoffman in Further Opposition to Cross-Motion to Intervene ("Hoffman Aff. II"), ECF No. 49. The Court will discuss this issue in greater detail.

*Timeliness*

Motions to intervene, whether they seek intervention as of right or permissive intervention, must be timely filed. *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 234 (2d Cir. 1996). There is, however, no strict definition of timeliness in the intervention context, and district courts have discretion to determine whether a motion to intervene is timely in each case. *See United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594–95 (2d Cir. 1986). Factors for the courts to consider include "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994); *see also Miller v. Silbermann*, 832 F. Supp. 663, 669 (S.D.N.Y. 1993) (if a proposed intervener "slept on" his rights before making the motion to intervene, this weighs against granting the motion). "In weighing these factors, the Court is mindful that Rule 24 'provides the flexibility necessary to cover the multitude of possible intervention situations . . . [and that] common sense demands that consideration . . . be given to matters that shape a particular action or particular type of action.'" *In re Tribune Co. Fraudulent Conveyance Litig.*, 291 F.R.D. 38, 41 (S.D.N.Y. 2013) (quoting *United States v. Hooker Chemicals & Plastics Corp.,* 749 F.2d 968, 983 (2d Cir. 1984)) (brackets in original).

Penn-Star provides evidence that it notified GNY of this action, with varying degrees of clarity, on five occasions. *See* Hoffman Aff. II. Penn-Star provides (1) a November 28, 2017 letter

in which Penn-Star clearly refers to the action as a "rescission and declaratory judgment action" and provides the case name and number (ECF No. 49-1); (2) a February 21, 2018 letter which refers to the same (ECF No. 42-2 at 3); (3) a March 6, 2018 e-mail reply, in response to a request for a status update by GNY, which references pending "coverage litigation" but does not use the word rescission (ECF No. 49-2); (4) an April 30, 2018 letter that again clearly references and explains the nature of the action (ECF No. 42-3 at 2); and (5) a May 10, 2018 letter in which Penn-Star "reserves" its right to seek rescission of the policy, albeit after it had filed this action (ECF No. 49 at 4).

GNY asserts that it "never reviewed the filings in this action until it first learned of the Offer of Judgment on September 13, 2018." Memo ISO 5. GNY argues that the March 6, 2018 e-mail reply was misleading, asserting that the phrase "coverage litigation" does not imply that Penn-Star was seeking rescission of the policy. *Id.* GNY claims it has no record of the February 21, 2018 letter, and that it has a record of the April 30, 2018 letter, but that it was administratively misfiled in its office and thus did not provide notice to the necessary employees. Reply 3. GNY did not have the opportunity to respond to the November 28, 2017 and May 10, 2018 letters as these were submitted only after GNY filed its Reply.

Aside from claiming it had no actual notice, GNY argues that even if it had been aware of this litigation and its nature, it would likely not have had cause to intervene because GNY's interests were, at that time, adequately protected by Maintenance's position that Penn-Star's rescission claim is invalid. *See* Memo ISO 7-8; Reply 3-4. GNY argues that it was not until September 13, 2018, when Penn-Star filed a Notice of Acceptance of Maintenance's Offer of Judgment, that GNY's interests were no longer being represented. *Id*.

GNY's latter argument is persuasive. A proposed intervener as of right is *required* to show that its interest in the litigation is not already being adequately protected by the parties. *See In re Bank of N.Y. Derivative Litig.*, 320 F.3d at 300. This inquiry is also a factor for the court to consider on a motion for permissive intervention. *See Pitney Bowes*, 25 F.3d at 70.

Penn-Star's claim in this action is that its policy with Maintenance should be rescinded. *See* Am. Compl. ¶¶ 43-57. Fundamentally, then, there are two possible positions in this litigation: the policy should be rescinded or it should not be rescinded. Maintenance vigorously argued the latter position, until it submitted an Offer of Judgment in which it agreed to rescission of the policy. *See* Answer to Am. Compl., ECF No. 27. Thus, before this Offer of Judgment, it is very unlikely that GNY could intervene as of right for the mere purpose of taking up the same position as Maintenance. GNY would also appear to have a weak case for permissive intervention while Maintenance was protecting GNY's interest by arguing against rescission of the policy.[1] Courts have frequently found that the length of time it took a third party to move to intervene should be construed from the time it knew or should have known that its interests were no longer being protected. *See Floyd v. City of New York,* 302 F.R.D. 69, 84–85 (S.D.N.Y. 2014) (collecting cases).

Arguably, even though GNY alleges it did not actually know of its interest in this action until September 13, 2018, Penn-Star provided substantial notice such that GNY should have known earlier. But the Court is not concerned with the proposed intervener's lapse in this regard

---

[1] This is not to say that determining whether there is adequate representation of a proposed intervener's interests in any given rescission action will be as straightforward. For example, a defendant seeking to avoid rescission may not advance every available argument against rescission where one such argument undermines a separate interest of the defendant. In that case, a proposed intervener who also seeks to avoid rescission may cite the defendant's failure to advance this argument as evidence that its interests are not being adequately represented. Here, however, Penn-Star does not suggest or provide any evidence that GNY's interests throughout this litigation were not being represented by Maintenance's opposition to rescission.

as *malum in se*. "It is firmly established that the most significant criterion in determining timeliness is whether the delay in moving for intervention has prejudiced any of the existing parties." *Floyd*, 302 F.R.D. at 98 (internal quotation marks and citation omitted). Whether GNY took notice of its interest in this litigation earlier is inconsequential to the question of whether its intervention now will delay or prejudice Penn-Star and Maintenance, because by all indications GNY could not have successfully moved to intervene until Maintenance submitted its Offer of Judgment. While a third party may not sandbag by refraining from filing a good motion to intervene until it becomes an ironclad motion to intervene, the evidence and argument before the Court do not suggest this scenario. In short, the Court cannot conclude that GNY "'slept on' [its] rights," *Miller*, 832 F. Supp. at 669, during a period when it could not have successfully moved to intervene *as of right*.

GNY moved to intervene on October 9, 2018, 26 days after September 13, 2018, when the docket reflected that Maintenance made an Offer of Judgment and was no longer representing GNY's interests. Under the circumstances of this case, this is an acceptable amount of time that does not prejudice the existing parties or unduly delay the case. *See generally Doe #1 by Parent #1 v. N.Y.C. Dep't of Educ.*, No. 16-CV-1684 (NGG) (RLM), 2018 WL 3637962, at *8 (E.D.N.Y. July 31, 2018) (Garaufis, J.) (finding that a three-month delay in filing motion to intervene was reasonable where motion presented complex issues).

Penn-Star's various other allegations of prejudice that would result from GNY's intervention are unavailing. Penn-Star's assertion that GNY's motion "could not be any closer in time to the finality of the case," Opp'n 4, is clearly overstated given that discovery was ongoing at the time it was filed. *See* Order dated June 26, 2018; *see also Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 88 (S.D.N.Y. 2018) (allowing intervention where discovery had already been completed). Finally, Penn-Star's contention that rescission is the "relatively certain final outcome

of this litigation," Reply 5, is not relevant to the Court's decision on GNY's motion. Even assuming this contention is true, the likely result of the case is not a factor for the court to consider in deciding a motion to intervene as of right.[2] *See In re Bank of N.Y. Derivative Litig.*, 320 F.3d at 300.

The Court therefore finds that GNY's motion is timely. Thus, GNY has met all four requirements for intervention as of right. The Court recommends granting GNY's motion to intervene.

*Penn-Star's Rule 68 argument*

In addition to arguing against GNY's intervention under the Rule 24 factors, Penn-Star asserts that its acceptance of an Offer of Judgment pursuant to Rule 68 constitutes a binding and irrevocable resolution of the case such that intervention is no longer permitted. Opp'n 2-3.

Judge Garaufis has referred this motion to the undersigned only for consideration of GNY's request to intervene and file an answer with a counterclaim, not to rule on Penn-Star's Motion for Declaratory Judgment. Order dated November 6, 2018. For purposes of this Order, then, it is sufficient to note that Offers of Judgment under Rule 68 "are construed according to ordinary contract principles," *Goodheart Clothing Co. v. Laura Goodman Enter., Inc.*, 962 F.2d 268, 272 (2d Cir. 1992), and that it is not the case that such offers, even if accepted, are categorically irrevocable as Penn-Star suggests.[3] *See Cesar v. Rubie's Costume Co.*, 219 F.R.D. 257, 259–60 (E.D.N.Y. 2004) (Garaufis, J.) (finding Offer of Judgment revocable and explaining factors for

---

[2] The likelihood that the addition of the proposed intervener will help resolve the case is a factor for a court's consideration in a motion for permissive intervention. But the Court here finds that GNY has established a right to intervene, and therefore need not consider whether it could also establish permissive intervention.

[3] Third parties may also intervene even after a judgment is entered. *See Yonkers Bd. of Educ.*, 801 F.2d at 596-97.

- 9 -

decision). Therefore, a third party does not lose the right to intervene merely because the original parties have submitted and accepted, respectively, an Offer of Judgment.

*GNY's Answer and Counterclaim*

In seeking intervention, GNY requests leave from the Court to file an answer, containing a counterclaim, in response to Penn-Star's Amended Complaint. *See* GNY's Proposed Answer with Counterclaim, ECF No. 38-1. Penn-Star has not taken issue with any specific provision of the proposed answer or counterclaim. Having found that GNY has a right to intervene, the Court also recommends granting GNY's request to serve an answer containing a counterclaim.

## CONCLUSION

For the reasons set forth above, the Court recommends that Greater New York Mutual Insurance's Cross-Motion to Intervene and Request to Serve an Answer and Counterclaim be granted.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                                                    /s/
                                       Steven L. Tiscione
                                       United States Magistrate Judge
                                       Eastern District of New York

Dated: Brooklyn, New York
      March 7, 2019