D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PENN-STAR INSURANCE COMPANY,

        Plaintiff,

    -against-

MAINTENANCE ASSET MANAGEMENT
INC., DANIEL MCELHATTON, and DECLAN
MCELHATTON,

        Defendants.

**MEMORANDUM & ORDER**

**17-CV-5047 (NGG) (ST)**

------------------------------------------------------------X
GREATER NEW YORK MUTUAL
INSURANCE COMPANY,

        Proposed Intervenor-
        Defendant

------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Penn-Star Insurance Company ("Penn-Star") initiated this diversity action on August 25, 2017, seeking rescission of an insurance policy it issued to Defendant Maintenance Asset Management Inc. ("MA") and declaratory relief related thereto. (Compl. (Dkt. 1).)

Before the court is Penn-Star's motion for entry of judgment (Penn-Star Mot. for Entry of J. ("Penn-Star Mot.") (Dkt. 35)) and Greater New York Mutual Insurance Company's ("GNY") motion to intervene (GNY Mot. to Intervene ("GNY Mot.") (Dkt. 38)), which the undersigned referred Magistrate Judge Steven Tiscione for a Report and Recommendation ("R&R"). (Nov. 6, 2018 Order Referring Mot.) On March 7, 2019, Judge Tiscione issued an R&R recommending that the court grant GNY's motion to intervene. (R&R (Dkt. 50).)

1

For the following reasons, the court OVERRULES the R&R, DENIES GNY's motion to intervene, and GRANTS Penn-Star's motion for entry of judgment.

I.  **BACKGROUND**

This case arises out of a fire that occurred on April 11, 2017, at 56-11 94th Street, Elmhurst, NY 11373. (GNY Mem. in Sup. of its Mot. to Intervene ("Mem.") (Dkt. 38-12) at 1.) The fire was allegedly caused by Defendants in this action. (See Am. Compl. (Dkt. 20) ¶¶ 20-26.) At the time of the fire, Defendants were covered by a general liability insurance policy (the "Policy") issued by Penn-Star. (Id. ¶¶ 8-9; Mem. at 4.)

A.  **Communication between Penn-Star and GNY**

Penn-Star and GNY exchanged several items of correspondence between the time of the fire and GNY's motion to intervene. On May 4, 2017, GNY tendered a demand for coverage to Penn-Star related to damages from the fire. (May 4, 2017 Letter from Jim Fitzpatrick (Dkt. 38-6).) After commencing this proceeding, Penn-Star sent a letter to GNY, dated November 28, 2017, stating:

> [P]lease be advised that . . . [Penn-Star] filed a rescission and declaratory judgment action titled Penn Star Insurance Company v. Maintenance Asset Management, Inc. and Declan McElhatton in the Eastern District of New York under case number 1:17-cv-05047-NGG-ST concerning [Penn-Star's] coverage obligations to our insured(s), if any, arising out of the fire.

(Nov. 28, 2017 Penn-Star Letter to GNY ("First Penn-Star Letter") (Dkt. 49-1 at 2).)[1] On February 6, 2018, GNY tendered a second demand for coverage to Penn-Star. (Feb. 6, 2018 Letter from Jim Fitzpatrick (Dkt. 38-7).) On February 21, 2018, Penn-Star sent a second letter to

---

[1] GNY did not have an opportunity to respond to the First Penn-Star Letter because it was appended to an affidavit filed after GNY's reply. (See Affidavit of Randi S. Hoffman (Dkt. 49).) Because the quoted excerpt was repeated verbatim in the Second Penn-Star Letter and the existence of the earlier letter does not affect the court's analysis, the court treats the First Penn-Star letter as if it was not received by GNY.

2

GNY, again giving explicit notice of this action. (Feb. 21, 2018 Penn-Star Letter to GNY ("Second Penn-Star Letter") (Dkt. 42-2) at 3.) On March 6, 2018, Randi Hoffman of Penn-Star sent an email to James Fitzpatrick at GNY. (See Mar. 6, 2018 Email from Randi Hoffman to James Fitzpatrick ("Hoffman Email") (Dkt. 49-2).) The email stated that "Penn-Star has filed coverage litigation against Maintenance Asset Management in the United States District Court for the Eastern District of New York." (Id.) On April 30, 2018, Penn-Star sent a third letter to GNY reserving the right to refuse to indemnify MA based on "rulings that may be made in the . . . rescission and declaratory judgment action now pending . . . under Action No. 1:17-cv-05047-NGG-ST." (Apr. 30, 2018 Penn-Star Letter to GNY ("Third Penn-Star Letter") (Dkt. 42-3 at 2).) On September 13, 2019, Fitzpatrick was copied on an email with the accepted offer of judgment attached. (Sept. 13, 2018 Email from Sal DeSantis (Dkt. 38-9).)

As noted above, GNY did not have an opportunity to respond to the First Penn-Star Letter because it was appended to an affidavit filed after GNY's reply. (See Affidavit of Randi S. Hoffman.) Additionally, GNY claims that the Second Penn-Star Letter was never received and the Third Penn-Star Letter was misfiled due to an internal clerical error and never reviewed. (See Reply at 2-3; Second Decl. of James V. Fitzpatrick ("Second Fitzpatrick Decl.") (Dkt. 47-1) ¶¶ 3-5.) Notably, GNY does not dispute receipt of the Hoffman Email; in fact, GNY included a copy of the email as an exhibit. (See Ex. F to the Declaration of James V. Fitzpatrick ("Fitzpatrick Decl.") (Dkt. 38-8).)

### B. Relevant Procedural History

Penn-Star initiated this action on August, 25, 2017, seeking to rescind the general liability insurance policy it issued to MA. (See Compl.) MA answered the complaint on November 17, 2017. (Answer (Dkt. 10).) Penn-Star filed an amended complaint on April 10, 2018

(Am. Compl. (Dkt. 20)), which MA answered on April 30, 2018. (Answer to Am. Compl. (Dkt. 24).) On September 13, 2018, while the parties were engaged in discovery, Penn-Star filed a notice that it had accepted an offer of judgment from MA pursuant to Federal Rule of Civil Procedure 68. (Notice of Acceptance of Offer of J. ("Notice of Acceptance") (Dkt. 33).) On September 25, 2018, Penn-Star filed a motion for entry of judgment. (Penn-Star Mot.) On September 26, 2018, the court ordered MA to file a response to Penn-Star's motion. (Sept. 26, 2018 Order.) On October 9, 2018, MA filed a response as ordered, consenting to the entry of judgement. (See MA Resp. to Penn-Star Mot. (Dkt. 37).)

Also on October 9, 2018, GNY filed a motion to intervene. (GNY Mot.) On October 11, Penn-Star filed a response in opposition to GNY's motion. (Penn-Star Mem. in Opp'n (Dkt. 42).) On October 18, GNY filed a reply. (Reply in Further Supp. of Mot. to Intervene ("Reply") (Dkt. 47).) With the court's permission (see October 25, 2018 Order), Penn-Star filed an affidavit on October 29, 2019. (See Affidavit of Randi S. Hoffman.)

On November 6, 2018, the undersigned referred GNY's Motion to Magistrate Judge Steven Tiscione for an R&R. (Nov. 6, 2018 Order Referring Mot.) On March 7, 2019, Judge Tiscione issued an R&R recommending that the court grant GNY's motion to intervene. (R&R.) On March 19, 2019, Penn-Star objected to Judge Tiscione's R&R. (Penn-Star Objs. (Dkt. 51).) On March 29, 2019, GNY responded to Penn-Star's objections. (GNY Resp. to Penn-Star Objs. (Dkt. 53).)

## II. GNY'S MOTION TO INTERVENE

### A. Legal Standard

In reviewing an R&R from a magistrate judge regarding a dispositive motion, the district court "may adopt those portions of the Report to which no objections have been made and which

4

are not facially erroneous." Romero v. Bestcare Inc., No. 15-CV-7397 (JS), 2017 WL 1180518, at *2 (E.D.N.Y. Mar. 29, 2017) (internal citation omitted); see also Impala v. U.S. Dep't of Justice, 670 F. App'x 32, 32 (2d Cir. 2016) (summary order) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision . . . ." (internal citation omitted)). The district court must review de novo "those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1); see Fed. R. Civ. P. 72(b)(3). To obtain de novo review, an objecting party "must point out the specific portions of the [R&R]" to which it objects. Sleepy's LLC v. Select Comfort Wholesale Corp., 222 F. Supp. 3d 169, 174 (E.D.N.Y. 2016); see also Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [R&R].").

Here, Penn-Star filed timely objections to Judge Tiscione's R&R. (See Penn-Star Objs.) Penn-Star objected to Judge Tiscione's finding that GNY's intervention request was timely and that GNY was reasonable in relying on MA to protect its interests. (See id. at 1-4.) For the following reasons, the court agrees that GNY's motion to intervene was untimely, overrules Judge Tiscione's R&R, and denies GNY's motion to intervene.

**B. Discussion**

To intervene in a pending matter as of right under Rule 24(a)(2), the proposed intervener must "(1) timely file an application, (2) show an interest in the action, (3) show that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp., 467 F.3d 238, 240 (2d Cir. 2006) (quoting In re Bank of N.Y. Derivative Litig., 320 F.3d 291, 300 (2d Cir. 2003)); see also Fed. R. Civ. Pro. 24(a)(2). "Failure to satisfy any one of these four

5

requirements is a sufficient ground to deny the application." R Best Produce, 467 F.3d. at 241 (emphasis omitted) (alterations adopted).

Under Rule 24(b), a court may grant a request for permissive intervention, "on timely motion," if the party either has a conditional statutory right to intervene or "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. Pro. 24(b). "The principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" United States v. Pitney Bowes, Inc., 25 F.3d 66, 73 (2d Cir. 1994) (quoting Fed. R. Civ. Pro. 24(b)(3)).

Judge Tiscione correctly observed that of the four requirements noted above, the parties primarily dispute whether GNY's motion to intervene was timely. (R&R at 4-5.) "A district court has broad discretion in assessing the timeliness of a motion to intervene, which defies precise definition." In re Holocaust Victim Assets Litig., 225 F.3d 191, 198 (2d Cir. 2000) (quotation marks and citation omitted). Relevant factors for determining timeliness include: "(a) the length of time the applicant knew or should have known of its interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." Floyd v. City of New York, 770 F.3d 1051, 1058 (2d Cir. 2014) (quoting MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 390 (2d Cir. 2006)). The court will address each factor in turn.

1. GNY knew or should have known of its interest for at least seven months before making its motion.

"Among the most important factors in a timeliness decision is the length of time the applicant knew or should have known of his interest before making the motion." Catanzano by

6

Catanzano v. Wing, 103 F.3d 223, 232 (2d Cir. 1996) (quotation marks omitted). In considering this factor, "the clock for intervening starts to run from the moment that a proposed intervenor becomes aware or should have become aware that he or she had interests in the subject matter of the litigation not otherwise protected by the existing parties to the lawsuit. Sec. & Exch. Comm'n v. Callahan, 193 F. Supp. 3d 177, 202 (E.D.N.Y. 2016) (emphasis in original).

Here, Penn-Star repeatedly informed GNY of the rescission action. Between November 28, 2017, and April 30, 2018, Penn-Star sent at least three letters and one email notifying GNY of the present action. (See First Penn-Star Letter; Second Penn-Star Letter; Third Penn-Star Letter; Hoffman Email.) The first and second letters state:

> [P]lease be advised that . . . [Penn-Star] filed a rescission and declaratory judgment action titled Penn Star Insurance Company v. Maintenance Asset Management, Inc. and Declan McElhatton in the Eastern District of New York under case number 1:17-cv-05047-NGG-ST concerning [Penn-Star's] coverage obligations to our insured(s), if any, arising out of the fire.

(First Penn-Star Letter at 2; Second Penn-Star Letter at 3.) The Third Penn-Star Letter explicitly refers to the "rescission and declaratory judgment action now pending in the United States District Court for the Eastern District of New York under Action No. 1:17-cv-05047-NGG-ST." (Third Penn-Star Letter at 2.) Finally, in an email sent from Randi Hoffman to James Fitzpatrick on March 6, 2018, Penn-Star informed GNY that "Penn-Star has filed coverage litigation against Maintenance Asset Management in the United States District Court for the Eastern District of New York." (Hoffman Email.)

GNY argues that its "clock for intervening" should not begin until September 13, 2018, the day that Penn-Star filed notice of the accepted offer of judgement. (See Reply at 3; Notice of Acceptance.) GNY states that the Second Penn-Star Letter was never received and the Third Penn-Star Letter was misfiled due to an internal clerical error and never reviewed. (See Reply at

7

2-3; Second Fitzpatrick Decl. ¶¶ 3-5.) GNY argues that the email did not constitute notice of this action because "[r]escission is the antithesis to coverage because rescission is voiding of the policy ab initio as if it never existed." (Mot. at 8.)

GNY's arguments are unpersuasive. First, GNY seems to concede that it had notice of the action well before September 13, 2018: "GNY's Cross-Motion[,] filed 25 days after its interests were no longer being represented, within 7 months of first being notified[,] is timely." (Reply at 4.) Second, the record demonstrates that even if GNY wasn't aware of this action prior to learning of the accepted offer of judgment, it should have been. Penn-Star sent multiple letters to GNY declaring that Penn-Star was seeking to rescind the Policy. GNY concedes to receiving the Third Penn-Star Letter, which establishes that GNY had notice of the rescission action by April 30, 2018. (Third Penn-Star Letter at 2.) Moreover, GNY received earlier notice of the matter on March 6, 2018, when Fitzpatrick received an email from Penn-Star informing him of the ongoing litigation. (See Hoffman Email.) GNY argues that Hoffman's phrasing insufficiently identified the precise nature of the action. However, Penn-Star's complaint is publicly available on the court's docket (see generally Compl.), and a few minutes of inquiry in response to the Hoffman Email would have revealed to GNY that its interest was in jeopardy. It is reasonable to expect an insurance company to promptly investigate any indication that a second insurance company—against whom it is seeking an equitable right of contribution—was litigating the policy under which the right was available. It is also reasonable to expect that an insurance company has notice of the contents of a letter received by the company. Here, Penn-Star did not "conceal[] its rescission claim from GNY" as GNY contends. (Mem. at 7). Instead, through a lack of due diligence and mismanagement of its incoming mail, GNY failed to apprise itself of readily available information concerning Penn-Star's attempt to rescind the Policy.

For the above reasons, the court finds that GNY was or should have been aware of its interest in this case by March 6, 2018, and that it waited over seven months before filing its motion to intervene.

### 2. The existing parties would be substantially prejudiced by GNY's late intervention.

The court next assesses the "prejudice to existing parties resulting from the applicant's delay." Floyd, 770 F.3d 1058. This analysis also weighs in favor of denying GNY's motion to intervene.

The Second Circuit has cautioned against allowing intervention in a matter that has been otherwise resolved. See, e.g., id. at 1058-59 (denying intervention sought after district court issued liability and remedial orders); Farmland Dairies v. Comm'r of N. Y. State Dep't of Agric. & Markets, 847 F.2d 1038, 1044 (2d Cir. 1988) ("[I]f Appellants were permitted to intervene at this late date, there is no question that the settlement concluded by [the plaintiff] and the [defendant] would be jeopardized."); United States v. Yonkers Bd. of Educ., 801 F.2d 593, 596 (2d Cir. 1986) ("[P]ost-judgment intervention . . . is generally disfavored because it usually creates delay and prejudice to existing parties."); see also Pitney Bowes, 25 F.3d at 73 (finding no abuse of discretion in denying a motion for permissive intervention when "the parties to the action had already agreed to the terms of the consent decree, and . . . intervention would require renegotiation[] and delay"). Specifically, the Second Circuit has repeatedly affirmed decisions denying intervention "where intervention would jeopardize a settlement between the existing parties and the proposed intervenor's explanation for the delay was inadequate." D'Amato v. Deutsche Bank, 236 F.3d 78, 84 (2d Cir. 2001) (citing Holocaust Victim Assets Litig., 225 F.3d at 198-99); see also Levin v. United States, 633 F. App'x 69, 71 (2d Cir. 2016) (summary order)

9

(affirming denial of intervention based in part on a finding "that [the] intervention would prejudice the current plaintiffs in that it would complicate the current settlement agreement").

Here, Penn-Star would be substantially prejudiced by GNY's delayed intervention. After nearly two years of litigation, Penn-Star and MA agreed upon a resolution and sought entry of judgment. (See Penn-Star Mot.) Allowing GNY to intervene at this late stage, when the only remaining step is the entry of the agreed-upon judgment, would "wast[e] the fruits of lengthy negotiations that had culminated in agreement." Pitney Bowes, Inc., 25 F.3d at 72. Allowing intervention would also cause the existing parties to incur substantial additional litigation expenses. Finally, Penn-Star faces additional prejudice in that allowing intervention would require Penn-Star to "continue providing [MA] with a defense in the underlying tort actions, where it may actually have no obligation to do so if the policy is declared void ad initio." (Penn-Star Objs. at 10.) If GNY intervenes, Penn-Star will have to provide MA with a defense throughout this litigation, which would otherwise end upon the entry of the agreed-upon judgment. Further, if GNY were to succeed in preventing Penn-Star from rescinding the Policy, Penn-Star would face a continuing obligation not only to defend MA, but potentially also to indemnify MA in the underlying tort actions related to the fire.

For the reasons stated above, the court finds that allowing intervention would substantially prejudice the existing parties.

3. <u>GNY also faces substantial prejudice if it is not permitted to intervene.</u>

GNY counters that it would also face substantial prejudice if the court were to deny its motion to intervene (GNY Mot. at 7), and Penn-Star fails to refute this claim. The court agrees with GNY. If GNY is unable to intervene, the Policy will be rescinded ab initio under the terms

10

of the accepted offer of judgment and GNY's ability to seek an equitable right of contribution will be severely compromised, if not eliminated.

The court is sympathetic to GNY's position, but GNY had the opportunity to avoid this outcome and failed to do so. GNY claims that "[h]ad GNY been noticed about a rescission action, it would have authorized counsel to intervene immediately." (Fitzpatrick Decl. ¶ 13.) However, GNY <u>was</u> notified of the action. GNY does not dispute receipt of the Hoffman Email, which informed it of litigation surrounding the policy. (GNY Mot. at 7). Nor does GNY dispute receipt of the Third Penn-Star Letter (GNY Reply at 3); instead, it states that the letter was misfiled and not reviewed. (Id.). Once GNY was made aware of the existence of litigation surrounding the Policy, "it was incumbent upon [it] . . . to take immediate affirmative steps to protect [its] interests." NAACP v. New York, 413 U.S. 345, 367 (1973); see also Tummino v. Hamburg, 260 F.R.D. 27, 36 (E.D.N.Y. 2009).

The court finds that GNY would be prejudiced if it is not allowed to intervene, but that the weight of the prejudice is lessened by GNY's failure to take affirmative steps to protect its own interests.

### 4. GNY's argument that it would have been unable to successfully intervene does not weigh against a finding of untimeliness.

Finally, GNY argues that its motion should be considered timely because "[i]t was not until GNY's interests were no longer being represented [by MA] that GNY was permitted to intervene as a matter of right." (Reply at 4.) Judge Tiscione found this argument to be compelling, and his R&R largely turned on the finding that GNY "could not have successfully moved to intervene until [MA] submitted its Offer of Judgment." (see id. at 7-8.)

This question is most appropriately considered under the final factor of the timelines inquiry: an "unusual circumstance[] militating for . . . a finding of timeliness." Floyd, 770 F.3d

11

at 1058. The court is unpersuaded by GNY's argument for two reasons. First, GNY moved for permissive intervention under Rule 24(b)(1)(B) as well as intervention as of right under Rule 24(a)(2). (GNY Mot. at 8-10.) A party seeking permissive intervention is not required to show inadequacy of representation. See Pitney Bowes, 25 F.3d at 73 (discussing the standard for permissive intervention); compare Fed. R. Civ. Pro. 24(b)(1)(B) with Fed. R. Civ. Pro. 24(a)(2). Therefore, even if the court were to agree that MA was adequately representing GNY's interests until they tendered an offer of judgment, GNY could still have sought permissive intervention well before October 9, 2018.

Second, the court does not agree that GNY was, as a matter of law, unable to seek intervention as of right prior to the offer of judgment. In general, the burden to show that an existing party inadequately represents a potential intervener's interests "should be treated as minimal." Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10 (1972). See also Chao v. Local 1104 Commc'ns Workers of Am., No. 06-CV-5896 (LDW). 2007 WL 1231616, at *2 (E.D.N.Y. Apr. 26, 2007) ("[T]he burden on an intervenor is to show that such representation may be inadequate and, therefore, should be treated as minimal." (quotation marks and citations omitted)).

It is true that the Second Circuit has "demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 179 (2d Cir. 2001). This increased burden applies to cases with a true identity of interests. See Travis v. Navient Corp., 284 F. Supp. 3d 335, 345-46 (E.D.N.Y. 2018) (finding identity of interests when the putative class included the proposed interveners); see also Ferguson v. Ruane Cuniff & Goldfarb Inc., No. 17-CV-6685(ALC), 2019 WL 1434435, at *5 (S.D.N.Y. Mar. 29, 2019) (holding that, for two

participants in the same retirement plan, "Plaintiffs and [the proposed intervenor] share an identity of interest and the same ultimate objective to recover losses from the Plan caused by Defendants' alleged breach of fiduciary duties" (quotation marks omitted)).

Judge Tiscione reasoned that "there are two possible positions in this litigation: the policy should be rescinded or it should not be rescinded" and, until the offer of judgment, GNY and MA advocated the same position. (R&R at 7.) However, the analysis for intervention of as right queries whether the proposed intervenor shares an identity of <u>interest</u>, not an identity of position. See Butler, Fitzgerald & Potter, 250 F.3d at 179. Here, there is no identity of interest between GNY and MA because they have different ultimate objectives. In simple terms, MA seeks (or sought prior to the offer of judgment) to uphold the Policy in order to protect itself from potential liability while GNY seeks to establish MA's liability for the fire and pursue a right of contribution under the Policy. (See Answer (Dkt. 24); Mem. at 1-3.) While both objectives require the Policy be in force, this similarity is not akin to the identity of interests of two members of a putative class, Travis, 284 F. Supp. 3d at 346, or two participants in a retirement plan seeking to recover losses caused by the plan administrator's alleged breach of fiduciary duties. Ferguson, 2019 WL 1434435, at *5. In both Travis and Ferguson the proposed intervenor had the same ultimate objective as the existing parties. Here, on the other hand, GNY ultimately seeks to establish the very liability from which MA wishes to protect itself.

The court is skeptical of GNY's argument that its reliance on a third party to protect its interests was not only justified, but required. The Second Circuit considered a similar situation in Floyd, and rejected the argument that a motion to intervene was timely when, "notwithstanding their awareness of their interests, [the proposed intervenors] did not know that the [existing party] would not be protecting those interests." Floyd, 770 F.3d at 1059. GNY's

13

purported reliance on MA is especially unwarranted considering GNY's assertion that "[a]s a result of [MA's] work, it is alleged that a fire occurred causing significant property damage resulting in lawsuits by multiple plaintiffs for well over $1,000,000" against GNY's insured. (Mem. at 2.) It would be strange indeed for the law to require GNY to rely on a third party to protect its interests when that same party may cause GNY to pay more than $1,000,000 in damages. As with the proposed intervenors in Floyd, "it should have been readily apparent to [GNY] that their interest diverged from [MA's] long before [GNY] filed for intervention." Floyd, 770 F.3d at 1059.[2]

Had GNY actually attempted to intervene prior to the offer of judgment, it would have needed to show only that MA might not adequately represent GNY's interests. See Chao, 2007 WL 1231616, at *2. GNY might have been able to sustain this burden simply by demonstrating that it ultimately sought to recover money from Penn-Star based on MA's alleged actions leading to the fire. In any event, GNY did not attempt to intervene before the offer of judgment and it has not unequivocally shown that it could not have successfully done so. Therefore, the court finds that GNY was not precluded, as a matter of law, from seeking to intervene before MA's offer of judgment and GNY's assertion that it was unable to seek intervention earlier is not an "unusual circumstance[] militating for . . . a finding of timeliness." Floyd, 770 F.3d at 1058.

---

[2] The Second Circuit noted that Floyd presented "particular and highly unusual facts and circumstances." Floyd, 770 F.3d at 1059. The panel stressed that its opinion should not be read to "encourage premature intervention in cases of public concern where government defendants have discretion to settle." Id. at 1054. This instant dispute between private insurance companies is not a "case[] of public concern" involving government defendants with "discretion to settle." Id. Also, the facts Floyd resemble those at hand. In Floyd, public sector unions sought to intervene in an otherwise-resolved lawsuit after New York City entered into a settlement agreement that the unions believed implicated their interests. Id. at 1056-57. The unions argued that "they did not become aware of their interests" prior to the district court issuing a Liability Order and Remedial Order, id. at 1058, and also that they had expected the City to protect their interests. Id. at 1059. The panel rejected both of these arguments. Id. Because the unions' arguments are similar to GNY's arguments here, the court finds Floyd instructive in considering the reasonableness of GNY's reliance on an otherwise adverse third party to protect its interests.

14

### C. Conclusion

The timeliness of a motion to intervene "must be evaluated against the totality of the circumstances before the court." Farmland Dairies, 847 F.2d at 1044. After considering the totality of the circumstances, the court finds that GNY's application to intervene under Rule 24(a)(2) was untimely. GNY knew or should have known of Penn-Star's rescission claim at least six months before Penn-Star filed the Notice of Acceptance, but did not file its motion seeking intervention until approximately one month later. The existing parties would face substantial prejudice if their agreement to resolve this litigation was upended at this late stage. In contrast, GNY could have avoided the prejudice it faces by promptly seeking to intervene upon notice of this action. Finally, GNY has not demonstrated that it would have been unable to intervene as a matter of law prior to MA's offer of judgment.

Additionally, because the court finds that GNY's motion to intervene pursuant to Rule 24(a)(2) was untimely, it also fails under Rule 24(b)(1)(B). See MasterCard Int'l Inc., 471 F.3d at 391 ("A motion for permissive intervention, like one for intervention of right, must be timely." (quoting Catanzano, 103 F.3d at 234)).

"Failure to satisfy any one of [the] four requirements is a sufficient ground to deny" a motion to intervene. R Best Produce., 467 F.3d. at 241 (emphasis omitted) (alterations adopted). Because the court finds that GNY's intervention request not timely, its motion to intervene is DENIED.

### III. PENN-STAR'S MOTION FOR ENTRY OF JUDGMENT

#### A. Legal Standard

Under Federal Rule of Civil Procedure 68(a), when a party files an offer of judgment together with the notice of acceptance and proof of service, "[t]he clerk must then enter

15

judgment." Fed. R. Civ. Pro. 68(a). The mandatory language of the rule generally leaves a court "no choice about entering the agreed judgment." Charles Alan Wright & Arthur R. Miller, 12 Federal Practice & Procedure § 3005 (3d ed. 2019). While the Second Circuit has not directly addressed whether a court is required to enter judgment after parties file an accepted Rule 68 offer, it noted in 1948 that "acceptance of an offer of judgment under rule 68" was one of "only two occasions when the clerk may enter final judgment without action of the judge or jury." Bowles v. J.J. Schmitt & Co., 170 F.2d 617, 620 (2d Cir. 1948). More recently, the other circuits that have considered this issue have uniformly held that a district court has little or no discretion to not enter the agreed-upon judgment. See White v. Nat'l Football League, 756 F.3d 585, 595-96 (8th Cir. 2014) ("[A]n offer of judgment . . . requires the clerk to enter a formal judgment in favor of the plaintiff, [but] the court itself exercises no review over the judgment. Rather, the court's involvement is limited to filing the judgment on the docket . . . ."); Ramming v. Nat. Gas Pipeline Co. of Am., 390 F.3d 366, 370 (5th Cir. 2004) ("The court generally has no discretion whether or not to enter the judgment. A Rule 68 Offer of Judgment is usually considered self-executing."); Webb v. James, 147 F.3d 617, 621 (7th Cir. 1998) ("[The Rule 68] language removes discretion from the clerk or the trial court as to whether to enter judgment upon the filing of the accepted offer."); Mallory v. Eyrich, 922 F.2d 1273, 1279 (6th Cir. 1991) ("[O]nce the parties agree on the terms of a Rule 68 judgment, the court has no discretion to withhold its entry or otherwise to frustrate the agreement.").

Also, district courts in this circuit have found that "the entry of final judgment pursuant to Rule 68 is a ministerial act that does not require the action of the judge." Harris v. City of New York, No. 03-CV-8767 (RWS), 2004 WL 1555194, at *1 (S.D.N.Y. July 12, 2004); see also Christian v. R. Wood Motors, Inc., No. 91-CV-1348, 1995 WL 238981, at *5 (N.D.N.Y. Apr.

16

21, 1995) ("Once the parties agree on the terms of a Rule 68 judgment, the court has no discretion to withhold its entry or otherwise to frustrate the agreement." (quotation marks omitted) (alterations adopted)).

There are exceptions to this rule. Courts have found that a Rule 68 offer made in the class-action context is subject to a post-acceptance fairness hearing, see, e.g., Blair v. Shanahan, 38 F.3d 1514, 1517-18 (9th Cir. 1994) (affirming district court that conducted hearing before entering judgement for an accepted Rule 68 offer), and that Rule 68 offers made in bankruptcy proceedings are still subject to Bankruptcy Court approval. See, e.g., Gordon v. Gouline, 81 F.3d 235, 240 (D.C. Cir. 1996). Further, while not precisely on point, courts have allowed offers of judgment to be revoked, but only in exceptional circumstances. For example, a Rule 68 offer may be revoked "where a defendant expresses its intent to make a Rule 68 offer by telephone, subsequently makes a Rule 68 offer containing an obvious but significant clerical mistake, and defendant's counsel conveys the mistake to the plaintiff's counsel on the very same day." Cesar v. Rubie's Costume Co., 219 F.R.D. 257, 261 (E.D.N.Y. 2004) (Garaufis, J.). The Fourth Circuit held that a party may rescind a Rule 68 offer where the plaintiffs, "while seeking to enforce a judgment against their insurer for the burning of their house, have actually confessed in their criminal trial to complicity in the burning of the house." Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1240 (4th Cir. 1989).

B. Discussion

On September 13, 2018, Penn-Star filed MA's offer of judgement, notice of its acceptance of the offer, and proof of service. (See Notice of Acceptance.) On September 25, 2018, Penn-Star moved for entry of judgment. (See Penn-Star Mot.) Pursuant to a court order, MA filed a response noting that "a judgment on specified terms was offered, accepted, and filed

17

pursuant to Rule 68" and consenting to the entry of judgment. (MA Resp. at 2.) Additionally, this case is neither a class action nor a bankruptcy proceeding, and the parties to the Rule 68 offer are not seeking to revoke it. Because the requirements of Rule 68 have been met and the aforementioned exceptions are not applicable, the mandatory language of the Rule requires that the court direct the Clerk to enter judgment on the terms within the offer.

GNY argues against the entry of judgment. GNY states that Penn-Star "failed to cite one case in which an insurer was permitted to rescind a policy with its insured when other parties had an interest to the policy." (Reply at 5.) In support of its argument, GNY cites one case from the Middle District of Georgia. Id. (citing Acceptance Indem. Ins. Co. v. Se. Forge, Inc., 209 F.R.D. 697 (M.D. Ga. 2002)). GNY's reliance on Acceptance is misplaced. In that case, unlike here, the concerned party had intervened prior to the Rule 68 offer and the intervention was not objected to by any of the existing parties. Acceptance Indem. Ins. Co., 209 F.R.D. at 699-700. While GNY correctly notes that the Acceptance court found "that in order for final judgment to be entered in this case pursuant to the offer of judgment, all of the parties must agree to it or any objecting party must be dismissed from the case prior to the entry of the final judgment," id. at 700, the resolution of that issue does not help GNY's case:

> Allowing JSL to intervene initially was not an abuse of discretion. However, the Court finds that in light of the changed circumstances, permitting JSL to remain as a permissive intervenor would unduly delay or prejudice the adjudication of the rights of the original parties. Accordingly, JSL is hereby dismissed as a party without prejudice.

Id. at 701 (internal quotation marks omitted). Here, unlike in Acceptance, it is not necessary for the court to dismiss GNY prior to directing the Clerk to enter judgment because here, unlike in Acceptance, GNY did not intervene before the acceptance of a Rule 68 offer.

In sum, GNY's only support for its opposition to the entry of judgment is a single non-binding district court case where the concerned party had successfully intervened prior to the offer of judgment and whose intervention was insufficient to prevent the entry of judgment pursuant to Rule 68. This is not sufficient to overcome the mandatory language of Rule 68.

Because the Notice of Acceptance meets the Rule 68 requirements and none of the exceptions are applicable, Penn-Star's motion for entry of judgment is GRANTED.

## IV. CONCLUSION

For the reasons explained above, Judge Tiscione's (Dkt. 50) R&R is OVERRULED, GNY's (Dkt. 38) motion to intervene is DENIED, and Penn-Star's (Dkt. 35) motion for entry of Judgment is GRANTED. The Clerk of Court is respectfully DIRECTED to enter judgment for Penn-Star in accordance with the terms of the accepted offer of judgment.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
September 27, 2019

NICHOLAS G. GARAUFIS
United States District Judge